UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO, CLC, et al., <br><br> Plaintiff, <br><br> v. <br><br> KENTUCKY WEST VIRGINIA GAS COMPANY, LLC, et al., <br><br> Defendants. | Civil No. 10-11-ART <br><br> **MEMORANDUM OPINION & ORDER** |

\*\*\* \*\*\* \*\*\* \*\*\*

The collective bargaining agreement between Kentucky West Virginia Gas and United Steel International Union says that, upon termination, Kentucky-West would negotiate a new agreement in good faith. Whatever its duties are under the National Labor Relations Act, Kentucky-West's successor thus has a potential *contractual* duty to do what it promised. This case is about the scope of that contractual duty. And so it belongs before an arbitrator. The Union filed a timely suit to compel arbitration, and its motion for summary judgment is granted.

**BACKGROUND**

In October 2003, Kentucky-West entered a collective bargaining agreement with the Union. *Equitable Res., Inc. v. United Steel*, 621 F.3d 538, 542 (6th Cir. 2010). Kentucky-West made several promises: (1) if it transferred its operation to another entity, it would condition the transfer on the transferee's "assuming all the obligations of the [a]greement until its expiration date," *id.*; (2) the agreement would continue at least until October 15, 2008, with sixty-days written notice before termination, R. 27, Attach. 16 at 12; and, (3) upon termination, it would negotiate with its employees for a "new [a]greement in good faith," *id.* Kentucky-West and the Union also agreed to arbitrate "any difference . . . relating to the meaning, application, or violation of any provisions of" the agreement. *Id.* at 5.

More than four years later, Kentucky-West's parent company, Equitable Resources, announced that it would eliminate Kentucky-West and integrate its operations with two other non-unionized subsidiaries. *Equitable Res.*, 621 F.3d at 542. Equitable notified the Union that the integration would void the collective bargaining agreement because Kentucky-West's soon-to-be-dispersed employees would no longer represent a cohesive bargaining unit (presumably under § 9 of the National Labor Relations Act, *see* 29 U.S.C. § 159(a)). *See, e.g.*, R. 29, Attach. 2 at 3; *Id.*, Attach. 3 at 3. The Union responded with a grievance, Equitable replied that it was inarbitrable, and the Union filed suit under § 301 of the NLRA to compel arbitration. *Equitable Res.*, 621 F.3d at 542. But the parties settled, and Equitable agreed to arbitrate. *Id.*

The arbitrator concluded that the agreement's successorship clause required Equitable to honor the agreement "until its expiration on October 15, 2008 for the former [Kentucky-

West] employees covered under that agreement." *Id.* at 544. The parties returned to Court, and the Court affirmed the decision, rejecting Equitable's argument that the arbitrator necessarily decided an issue within the exclusive jurisdiction of the National Labor Relations Board—whether the Union remained a proper representative of former Kentucky-West employees. The Sixth Circuit affirmed. *Id.* at 538.

In the course of resolving that dispute, another arose. The Union claimed that Equitable could not terminate the agreement, even on October 15, 2008, without sixty-days written notice. R. 29, Attach. 8 at 4. Purportedly to "eliminate any possible doubt" about the termination of the agreement, Equitable then filed a notice of termination on October 7, 2008. R. 29, Attach. 1 at 4; *Id.*, Attach. 11. The Union responded with another grievance, Grievance 08-28, obliquely claiming that the notice "d[id] not comply with the requirements" of the collective bargaining agreement. *Id.*, Attach. 13. (It would later clarify its belief that the collective bargaining agreement required Equitable to promise good faith negotiations for a new agreement in the notice.) That same day, the Union petitioned this Court to remand to the arbitrator to clarify his position on the termination of the agreement. *Equitable Res. v. United Steel*, No. 7:08-151 (E.D. Ky. Oct. 8, 2008), R. 33 at 10. Weeks later, on October 22, Equitable responded to the grievance with a letter stating that it was Equitable's position that the agreement terminated with the restructuring and that the October 7 notice was merely prophylactic. R. 29, Attach. 14. It added that it had provided "numerous notices" that the agreement would terminate no later than October 15 and that the October 7 notice "fully complie[d]" with the collective bargaining agreement. *Id.* Two days later, the Court remanded to the arbitrator to clarify three issues: (1) Whether the question

3

about the agreement's duration had been before him the first time around; (2) If so, whether the notice provision applied; and (3) If so, whether Equitable gave notice. No. 08-151, R. 37.

Roughly a week later, the Union responded with a letter on October 28 stating that Equitable's sluggish response to the grievance "clearly shows that it has no intention to meet with the Union or comply with the time limits in the Grievance and Arbitration procedure." R. 29, Attach. 15. The Union added that it "want[ed] to proceed on to arbitration." *Id.*

The arbitrator responded to the remand order a month later. He confirmed that the duration of the agreement had been before him and that the notice requirement applied. But he said that the propriety of Equitable's notice had to be taken up in a new grievance because "there was no evidence of notice given" at the initial hearing. R. 29, Attach. 16 at 4, 16. The next day, an Equitable representative wrote the Union to say they should meet to "discuss the grievances already on file that cover the time period between July 1, 2008 and October 15, 2008" and that he "assume[d] that [the Union would] be filing a grievance related to the unresolved issue of the adequacy of the notice of termination by October 15." *Id.*, Attach. 17. He added that they could "discuss" the anticipated grievance and "pick[] an arbitration panel during" their meeting. *Id.*

Nearly two months later, on January 28, 2009, Equitable sent the Union a letter confirming their January 30 meeting. *Id.*, Attach. 18. Equitable attached a list of grievances to be discussed, including Grievance 08-28. *Id.* At the meeting, an Equitable representative allegedly "reiterated" that "it would not arbitrate Grievance 08-28 and again reminded the Union that it had to file a grievance on the October 15, 2008 expiration date pursuant to the" arbitrator's remand award. *Id.*, Attach. 2 at 5. Despite this alleged statement, the Union

4

requested the services of an arbitration panel to resolve Grievance 08-28. *Id.* Attach. 21. The arbitration service sent a list of potential arbitrators for the parties to consider on February 3, 2009, but Equitable never responded. *Id.*; *Id.*, Attach. 2 at 5. Ten days later, though, Equitable wrote the Union about another grievance, saying that it was "subsumed" within Grievance 08-28 and that "[o]nce the issue concerning the termination of the CBA is resolved," then the parties could decide how to resolve the other grievance. R. 31, Attach. 2. A month later, on March 8, a Union representative wrote Equitable that it had requested arbitration of Grievance 08-28 in late October and had received no response. The Union further requested that Equitable "expedite" Grievance 08-28 "on to arbitration" and that Equitable respond in five working days. R. 29, Attach. 22.

On September 9, 2009, the Court held a hearing on a motion the Union filed to hold Equitable in contempt for sending a letter to former Kentucky-West employees offering to buy them out of their retirement benefits. No. 08-151, R. 41, Attach. 2; R. 68. The Court denied the motion but held that "[a]ll grievances involving conduct that occurred on or before December 6, 2008" would be handled in compliance with the collective bargaining agreement. *Id.*, R. 68 at 2. The Court specifically said that it was in "no way" deciding the "notice issue." *Id.* That is, the "collective bargaining agreement could have expired on October 15, 2008" and the order had "no bearing on that issue." *Id.*

The next day, the Union once more wrote to Equitable. It said that resolution of Grievance 08-28 would be "essential to framing the appropriate remedy in many of the other pending grievances" mentioned in the Court's order. R. 29, Attach. 24. It further noted that Equitable had "thus far[] refused to select an arbitrator" from the federal arbitration service.

*Id.* And it insisted that Grievance 08-28 "must proceed to arbitration" and that Equitable "be ready to select an arbitrator" by September 16. *Id.* Equitable responded on September 25 in a letter commenting on several grievances. *Id.*, Attach. 25. There, Equitable said that "as discussed on [a] phone call" the prior week, "there is no purpose to" Grievance 08-28 "except to deal with conduct after December 6, 2008, which is beyond the court's order, and beyond the court's jurisdiction." *Id.* at 3. In response, the Union filed another motion for contempt. The Court denied the motion and said that the dispute over Grievance 08-28 would have to be resolved in a separate lawsuit. *Id.*, Attach. 27 at 6. On January 21, 2010, the Union filed this suit to compel Equitable to arbitrate Grievance 08-28. The parties have since filed cross motions for summary judgment.

## DISCUSSION

The Union is right, Grievance 08-28 must go to an arbitrator. The collective bargaining agreement broadly submits disputes over the "meaning, application or violation" of the agreement to arbitration. And Grievance 08-28—which questions whether Equitable's October 7, 2008, notice of termination violated the collective bargaining agreement by failing to include a promise to negotiate a new agreement in good faith—fits comfortably into that broad language. *Cf. Inner City Broad. Corp. v. Am. Fed. of Television and Radio Artists*, 586 F. Supp. 556, 561 (S.D.N.Y. 1984) (holding that parties must arbitrate provision of contract requiring them to negotiate for a new agreement in good faith). All the more so because such broad language supports a presumption of arbitrability, *see United Steelworkers of Am. v. Meade Corp.*, 21 F.3d 128, 132 (6th Cir. 1994), and because labor law supplies a "liberal federal policy favoring arbitration agreements." *United Steelworkers v. Saint*

*Gobain Ceramics & Plastics, Inc.*, 505 F.3d 417, 420 (6th Cir. 2007) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

**1. *Statute of Limitations:*** Hoping to avoid this conclusion, Equitable argues first, and incorrectly, that the statute of limitations bars this suit to compel arbitration. Equitable's problem is not that it failed to plead the statute of limitations in its answer. The Union has shown no prejudice from Equitable's waiting to raise it now. *See R.H. Cochran & Assocs. v. Sheet Metal Workers Int'l Ass'n*, 335 F. App'x 516, 519 (6th Cir. 2009). Rather, its problem is that parties in the Union's shoes have six months to sue for arbitration, starting with the day on which the defendant unequivocally refuses to arbitrate. *McCreedy v. Local Union No. 971*, 809 F.2d 1232, 1236 (6th Cir. 1987) (applying statute of limitations from § 10(b) of the NLRA). With the "high bar" for showing unequivocal refusal in mind, *Local Union No. 661 v. Zenith Logistics, Inc.*, 550 F.3d 589, 592 (6th Cir. 2008), the earliest day on which Equitable can be said to have made an "immediate, blunt, or to the point" refusal to arbitrate is September 25, 2009. *Int'l Union v. Cummins*, 434 F.3d 478, 483 (6th Cir. 2006). It was then that the company notified the Union that there was "no purpose" to Grievance 08-28 after the Union's repeated requests to arbitrate it. R. 29, Attach. 25 at 3. (Though, this refusal is also less than explicit.)

Equitable's arguments that it unequivocally refused to arbitrate on earlier dates fail: For example, it says that it "reiterated that it would not arbitrate Grievance 08-28" at a meeting with the Union on January 30, 2009. *Id.*, Attach. 2 at 5. But this claim has several problems. First, Equitable does not specify what it actually said at the meeting. If it merely "reiterated" what it earlier "iterated," it is out of luck. All Equitable had "iterated" before

7

was that Grievance 08-28 is without merit, not that the grievance was inarbitrable. Second, that same affidavit says that Equitable told "the Union that it had to file a grievance on the October 15, 2008 expiration date[.]" *Id.* This willingness to process a grievance about the October 15, 2008, expiration date at the same time Equitable refused to arbitrate Grievance 08-28 must have seemed equivocal to the Union. At that time (unlike now), Equitable still spoke about Grievance 08-28 as encompassing whether the contract terminated on October 15, 2008. In a letter written just one month after the meeting, Equitable wrote that "whether the collective bargaining agreement *expired on October 15* or . . . December 6" was the "subject of [G]rievance 08-28." R. 31, Attach. 2 (emphasis added). Third, however unequivocal Equitable was at the January 30 meeting, its contemporaneous and "subsequent conduct" muddled that message. *See Cummins*, 434 F.3d at 484-85 (holding that even an express refusal to arbitrate can be equivocal if refusing party otherwise hints at a willingness to negotiate the grievance in contemporaneous and "subsequent" conduct); *Aluminum Brick & Glass Workers Int'l Union v. AAA Plumbing*, 991 F.2d 1545, 1549 (11th Cir. 1993) (holding that subsequent conduct confirmed that statement was equivocal); *United Steelworkers v. Murphy Oil, U.S.A., Inc.*, No. 00-0371, 2000 WL 1341471, at *1 (E.D. La. Sept. 14, 2000) (same). Just before the January 30th statement, Equitable listed Grievance 08-28 among those to be "discuss[ed]" at the meeting, R. 29, Attach. 18—which does not quite sound like an unequivocal refusal to negotiate. And more significantly, weeks after the meeting Equitable wrote the Union to say that another grievance was "subsumed" within the "subject of Grievance 08-28," which raised an "issue" that still needed to be "resolved." R. 31, Attach. 2.

8

Like its push to count January 30, Equitable's other attempts to advance the date of its unequivocal refusal fall short of the "high bar" set by the Sixth Circuit (a burden Equitable must bear as the proponent of this affirmative defense). First, it proposes October 22, 2008, when it responded to Grievance 08-28 with a letter insisting that the collective bargaining agreement "terminated as a matter of law upon [] restructuring" or "no later than October 15, 2008." R. 29, Attach. 14. The letter also said that the October 7 notice "fully complie[d]" with the requirements of the agreement. *Id.* But this is nothing more than a denial of the merits of the grievance, not a refusal to arbitrate it. *See McCreedy*, 809 F.2d at 1236 (holding that claim accrues on date when union failed to timely appeal employee's grievance to arbitration rather than the date on which the grievance was denied); *Zenith Logistics*, 550 F.3d at 592 (holding that letters stating that party "would not participate in any aspect of the grievances" was not an unequivocal refusal to arbitrate because the letters were not about arbitration specifically). Second, Equitable contends that its non-response to a request that it select an arbitrator to resolve Grievance 08-28 on February 3, 2009, and to a follow-up letter from the Union on March 8, 2009, establishes an unequivocal refusal to arbitrate—at least when combined with its express refusal at the January 30, 2009, meeting. Yet refusing to respond to a request for arbitration is typically not an unequivocal refusal to arbitrate. *See Local Joint Exec. Bd. of Las Vegas v. Exber, Inc.*, 994 F.2d 674, 674-75 (9th Cir. 1993) (holding that not responding to two requests to arbitrate was not an unequivocal refusal). Even in the cases Equitable cites to the contrary, the defendant did more than simply fail to respond. *See Aluminum, Brick & Glassworkers Int'l Union v. A.P. Green Refractories, Inc.*, 895 F.2d 1053, 1054 (5th Cir. 1990) (party attended arbitration session but objected to

9

arbitrating a grievance and discontinued session); *United Steel v. ConocoPhillips Co.*, __ F. Supp. 2d__, No. 06-363, 2010 WL 4056124, at *8-9 (N.D. Okla. Oct. 15, 2010) (holding that employer unequivocally refused to arbitrate when it sent a letter implying grievance was inarbitrable and also failed to respond to a request to arbitrate). And the fact still remains that at the very time Equitable was not responding to the Union's arbitration requests, it also sent the Union a letter saying that another grievance was "subsumed" by Grievance 08-28 and that Grievance 08-28 presented an issue that still needed to be "resolved."

In the background of all these would-be refusals, Equitable has another problem. Sophisticated and well-represented as it is, the company passed up opportunity after opportunity to build a record of its refusal. It failed to document its refusal either in its initial response to the grievance in October 2008, or in its letters on July 1, 2008, and January 28, 2009. It declined to respond to the arbitration service's letter providing a list of arbitrators to resolve Grievance 08-28. It actually said Grievance 08-28 was still to be "resolved" in a letter on February 13, 2009. It further declined to respond to the Union's request to expedite the grievance on March 8, 2009. And, finally, it said nothing in a hearing before this Court on September 9, 2009. This pattern of silence is hardly indicative of Equitable's taking a hard position against arbitrating Grievance 08-28. *See Cummins*, 434 F.3d at 484 (holding that failure to respond to letter specifically asking whether company refused to arbitrate was a sign of equivocation). All the less so when viewed through the lens of the "high bar" set by the Sixth Circuit.

One last point about the statute of limitations: Equitable says that the Union's own correspondence establishes that Equitable unequivocally refused to arbitrate. That is, the

Union wrote in a letter on March 8, 2009, that it had requested arbitration of Grievance 08-28 but that it had "not received a response . . . agreeing to arbitrate." R. 29, Attach. 22. And in a later letter, the Union wrote that Equitable had "thus far[] refused to select an arbitrator" from the list of potential arbitrators provided in February 2009. *Id.*, Attach. 24. Yet this, too, is unconvincing. Not only has the Sixth Circuit said that it is the conduct of the party refusing arbitration, not the party seeking arbitration, that matters. *Zenith Logistics*, 530 F.3d at 593 ("The focus is on the employer's position, not the Union's conduct."). But looking at the Union's conduct to measure the certainty of Equitable's refusal to arbitrate is dangerous business for Equitable. The Union continually wrote to Equitable to request arbitration, all the way through September 2009. And even in that final letter, it requested arbitration. The Union gave little sign that it understood Equitable to have conclusively refused to arbitrate. Having failed to unequivocally refuse to arbitrate before September 2009, then, Equitable's statute-of-limitations argument is unpersuasive.

**2.  *Proper Subject of Arbitration:***  Equitable next argues, also incorrectly, that an arbitrator cannot decide Grievance 08-28. The argument seems to be this: The Supreme Court has said that issues arguably arising under § 8 of the NLRA, which covers unfair labor practices, are within the exclusive jurisdiction of the NLRB. *San Diego Bld. Trades Council v. Garmon*, 359 U.S. 236, 246 (1959). Section 301 of the NLRA does offer an exception to this, granting federal courts jurisdiction over "[s]uits for violations of contracts between an employer and a labor organization"—including suits to compel arbitration. *DiPonio Constr. Co. v. Int'l Union of Bricklayers*, 739 F. Supp. 2d 986, 991 (E.D. Mich. 2010). But that exception is itself limited where the subject of the dispute is not merely about the terms of an

agreement between an employer and a union, but also about the employer's obligation under NLRA § 8(a)(5) to bargain with a union properly chosen as the representative of a bargaining unit of employees by a majority of those employees in accordance with § 9. *Carey v. Westinghouse Elec. Corp.*, 375 U.S. 261, 266 (1964); 29 U.S.C. § 159(a) ("Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining."). As the Sixth Circuit has held, then, if an issue is "primarily representational," rather than contractual, federal courts (and arbitrators) should defer to the NLRB. *Int'l Bhd of Elec. Workers v. Trafftech, Inc.*, 461 F.3d 690, 694-95 (6th Cir. 2006). And, says Equitable, Grievance 08-28 is "primarily representational" because whoever resolves it must first decide whether the Union remains a proper representative of the former Kentucky-West employees under § 9 of the NLRA. *See id.* at 695 (citing *Amalgamated Clothing & Textile Workers v. Facetglas, Inc.*, 845 F.2d 1250, 1253 (4th Cir. 1998)).

The first problem with Equitable's argument is that the company failed to develop it. *See United States v. Zannino*, 895 F.2d 1, 7 (1st Cir. 1990) ("It is not enough to merely mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones."). At the risk of doing the "counsel's work," *id.*, the argument seems to be this: (1) the essence of Grievance 08-28 is that Equitable must promise to bargain with the Union for a new agreement in good faith; (2) it can only have a duty to bargain with the Union under § 8 of the NLRA if the Union remains a representative of an intact bargaining unit of former Kentucky-West employees as

defined under § 9 of the NLRA; and (3) deciding Grievance 08-28 thus requires a decision that former Kentucky-West employees are a true § 9 bargaining unit even after Kentucky-West's dissolution and that the Union is still their § 9 majority representative.

But it is not true that Grievance 08-28 requires deciding that the Union is still a proper § 9 representative (step three) because it is not true that Equitable could only have a duty to negotiate a new agreement if the Union was a proper § 9 representative (step two). Sure, § 8(a) of the NLRA would not impose a *statutory* duty on Equitable to negotiate a new agreement if the Union is not a proper § 9 representative of an intact bargaining unit. *See, e.g.*, *Levitz Furniture Co. of the Pacific, Inc.*, 333 NLRB No. 105, at *2 (March 29, 2001) ("[A]n employer can defeat a postwithdrawal refusal to bargain allegation if it shows, as a defense, the union's actual loss of majority status."). But Equitable could still have, as Grievance 08-28 alleges, a *contractual* duty to negotiate a new agreement under the collective bargaining agreement because "the absence of a statutory duty to bargain does not relieve a party from its contractual obligation" to negotiate a new agreement. *Local Union No. 666 v. Sotkes Elec. Serv., Inc.*, 225 F.3d 415, 423 (4th Cir. 2000). For this reason, the Sixth Circuit and several others have held, in a slightly different context, that an employer who has contracted to negotiate a new agreement must honor that promise even where the NLRA would not require it because, for example, the "union lost its status as the majority representative" under § 9, *Mulvaney Mech., Inc. v. Sheet Metal Workers Int'l Ass'n*, 288 F.3d 491, 499-500 (2d Cir. 2002) *vacated*, 123 S. Ct. 1572 (2003), *reaff'd by* 351 F.3d 43 (2d Cir. 2003). *See Sheet Metal Workers Int'l Ass'n v. Dane Sheet Metal, Inc.*, 932 F.2d 578, 582 (6th Cir. 1991); *see also Local Union No. 666*, 225 F.3d at 423; *Local Union 257 v.*

13

*Sebastian Elec.*, 121 F.3d 1180, 1185 (8th Cir. 1997); *Am. Metal Prods. v. Sheet Metal Workers Int'l Ass'n*, 794 F.2d 1452, 1455 (9th Cir. 1986).

Equitable might assume that an arbitrator cannot compel it to honor its contractual promise if the Union has lost its statutory representational status because the NLRA imposes a "general rule" against "enter[ing] into a collective bargaining agreement" with a union that represents less than a majority of the employees in a proper bargaining unit. *Local Union 666*, 225 F.3d at 418. But that rule would only apply if the contractual duty obligated Equitable to enter a new agreement under which the Union would be the *exclusive* § 9 representative of all the employees in a Kentucky-West bargaining unit, whether they wanted it or not. *Cf. Local Union 666*, 225 F.3d at 423 (holding that employer continued to be bound by contractual duty to negotiate new agreement even if union was not at § 9(a) representative because the union was not trying to force the employer to recognize it as an exclusive representative under § 9(a)). Employers are still allowed to enter agreements with a minority union that purports to represent only those employees who choose it as their representative. *See Retail Clerks Int'l Ass'n v. Lion Dry Goods, Inc.*, 369 U.S. 17, 29 (1962); Robert A. Gorman & Matthew Finkin, *Basic Text on Labor Law Unionization and Collective Bargaining* 273 (2d ed. 2004); *see also Local 377 v. 1864 Tenants Ass'n*, No. 06-1190, 2007 WL 634751, at *4 (S.D.N.Y. Mar. 1, 2007). And Equitable points to nothing in the current contract that would forbid entering a new agreement with the Union as a so called "members only," rather than exclusive, representative. *See* Gorman & Finkin, *supra.*

Nor can Equitable avoid arbitration of this dispute on the theory that it has "repudiated" this collective bargaining agreement as void now that the Union has lost its

14

representational status. *See Local Union 666*, 225 F.3d at 421 (noting that employer did not "repudiate" old agreement while holding that employer had contractual duty to negotiate new agreement). First, it has not directly made such an argument, and the Court will not do so for it. *See Zannino*, 895 F.2d at 7. Second, repudiating a collective bargaining agreement is not a way to avoid arbitration: Courts widely enforce contractual arbitration clauses against repudiating parties, holding that repudiation is itself an issue for an arbitrator to decide. *See, e.g.*, *Cal. Trucking Ass'n v. Bhd of Teamsters*, 679 F.2d 1275, 1282 (9th Cir. 1981) (citing cases). Third, an arbitrator already held that the agreement survived the Kentucky-West integration over Equitable's argument that its integration voided the agreement, and both this Court and the Sixth Circuit have affirmed him. Finally, repudiation may well be a tool for voiding a contractual obligation that requires an employer, contrary to the NLRA, to continue to recognize a union that has lost its majority status as the exclusive representative of a bargaining unit under § 9. But the Court knows of no authority to suggest an employer can "repudiate," and thus void, a contract with a minority union that purports to represent only those who have chosen it as a representative—in other words, a union with whom an employer can collectively bargain without implicating the NLRA. *See Lion Dry Goods, Inc.*, 369 U.S. at 29. Hence, arbitration is still proper.

To tie all of this together, consider an example in an easier case: Assume a small group of employees—representing a mere fraction of the employees that would form a true bargaining unit under the NLRA—organize and unanimously select a union to represent them. The union and the employer sign a collective bargaining agreement that applies *only* to those consenting employees, not the rest of the members of the potential bargaining unit.

15

In the agreement, the employer promises to give sixty-days notice of termination and, in the notice, the employer will schedule negotiations for a new agreement. The parties agree to arbitrate any dispute under the contract.

Months later, the employer reorganizes and splits the employees up among different factories. It sends the union notice of termination, but refuses to schedule negotiations for a new agreement. The employer is adamant that it has no duty to negotiate with the union under the NLRA. And, the employer adds for good measure, it is "repudiating" the contract because the union is not a proper § 9 representative. That employer, like Equitable, is right that it has no statutory duty to negotiate a new agreement. But it still *arguably* contracted to negotiate a new agreement. The absence of a statutory duty does not change that, and nothing in the NLRA forbids keeping the alleged promise. The parties are engaged in a live *contractual* dispute. Because they confront no statutory representational issues under §§ 8 and 9 of the NLRA, their dispute belongs before an arbitrator.

Aside from the explicit contractual requirement that the notice of termination include a promise to negotiate a new agreement,[1] that case is not much different from this one. The solitary remaining difference is that the Union here was once a § 9 majority representative. But now, even assuming the Union is no longer a majority representative that could bind an entire collective bargaining unit, the Union and Equitable could still negotiate a new agreement under which the Union is a minority representative purporting to represent only its consenting members. Deciding whether Equitable *must* promise to negotiate is thus a

---

[1] The Court in *no way* means to decide whether the termination notice in *this* case was required to include a promise to negotiate a new agreement or whether it was otherwise inadequate. It also is not deciding whether or when the agreement expired. These issues are entirely for the arbitrator to decide.

contractual dispute that does not turn on the Union's § 9 representative status. It is not "primarily representational," and so an arbitrator gets to resolve it—as the parties agreed.

**3.** *The Grievance is Not Moot:* Equitable's final argument it that the contract inarguably terminated on October 15, 2008, so this dispute over a notice of termination for a later date is moot. Suffice it to say that whether the contract terminated on October 15, 2008, is itself an issue the arbitrator can decide as a necessary predicate to deciding the merits of the grievance. *See Teamsters Local Union No. 89 v. Krogers Co.*, 617 F.3d 899, 906-07 (6th Cir. 2010) ("[W]here the dispute turns not on whether the parties ever agreed to arbitrate, but rather whether an agreement to arbitrate has expired or terminated, the question of termination is for the arbitrator.") (quoting *Int'l Ass'n of Bridge, Structural, and Ornamental Iron Workers v. J & N Steel & Erection Co.*, 8 F. App'x 381, 386 (6th Cir. 2001)). After all, "resolution of the [termination] issue involves examining and interpreting the termination provisions of the agreement." *Id.* The Court will thus order this dispute to arbitration.

## CONCLUSION

Accordingly, it is **ORDERED** that the Union's motion for summary judgment, R. 27 and R. 28, is **GRANTED**, and Equitable's motion for summary judgment, R. 29, is **DENIED**. It is further **ORDERED** that this matter is **REFERRED** to arbitration as provided in the collective bargaining agreement.

This the 18th day of April, 2011.



Signed By:
*Amul R. Thapar* AT
United States District Judge