UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO, CLC, et al., | ) ) ) ) ) ) ) | Civil No. 10-11-ART |
| Plaintiff, | ) ) | |
| v. | ) ) ) | **MEMORANDUM OPINION & ORDER** |
| KENTUCKY WEST VIRGINIA GAS COMPANY, LLC, et al., | ) ) ) | |
| Defendants. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

With two exceptions, the National Labor Relations Act forbids bargaining with a union that does not represent a majority of the employees in an "appropriate" bargaining unit. In this case, the employees in a union-represented bargaining unit have been split up between two subsidiaries. So to decide whether the employer has an *enforceable* duty—contractual or statutory—to bargain with the same Union for a new agreement, one must first decide whether the employees remain an "appropriate" bargaining unit. That "primarily representational" decision is within the exclusive jurisdiction of the National Labor Relations Board, and so this case cannot go to an arbitrator at this stage. This Court's prior decision otherwise relied on a narrow exception which the Union has since repudiated. Accordingly, that prior decision is vacated and the judgment is amended in favor of the employer.

**BACKGROUND**

In October 2003, Kentucky-West entered a collective bargaining agreement with the Union. *Equitable Res., Inc. v. United Steel, Local 8-512*, 621 F.3d 538, 542 (6th Cir. 2010). By its terms, the agreement would continue at least until October 15, 2008, with sixty-days written notice before termination. R. 27, Attach. 16 at 12. Upon termination, Kentucky-West agreed to negotiate with its employees for a "new [a]greement in good faith." *Id.* Kentucky-West and the Union also agreed to arbitrate "any difference . . . relating to the meaning, application, or violation of any provisions of" the agreement. *Id.* at 5.

More than four years later, Kentucky-West's parent company, Equitable Resources, announced that it would eliminate Kentucky-West and integrate its operations with two other non-unionized subsidiaries. *Equitable Res.*, 621 F.3d at 542. Equitable notified the Union that the integration would void the collective bargaining agreement because Kentucky-West's soon-to-be-dispersed employees would no longer represent an appropriate bargaining unit under § 9 of the National Labor Relations Act, 29 U.S.C. § 159(a). *See, e.g.*, R. 29, Attach. 2 at 3; *Id.*, Attach. 3 at 3. The Union responded with a grievance, Equitable replied that it was inarbitrable, and the Union filed suit under § 301 of the NLRA to compel arbitration. *Equitable Res.*, 621 F.3d at 542. But the parties settled, and Equitable agreed to arbitrate. *Id.* The arbitrator concluded that Equitable had to honor the agreement, and this Court and the Sixth Circuit affirmed. *Id.* at 544.

In the meantime, another dispute arose. The Union claimed that Equitable could not terminate the agreement, even on October 15, 2008, without sixty-days written notice. R. 29, Attach. 8 at 4. Purportedly to "eliminate any possible doubt" about the termination of the

agreement, Equitable then filed a notice of termination on October 7, 2008. R. 29, Attach. 1 at 4; *Id.*, Attach. 11. The Union responded with another grievance, Grievance 08-28, claiming that the notice "d[id] not comply with the requirements" of the collective bargaining agreement. *Id.*, Attach. 13. The Union would later clarify its belief that the collective bargaining agreement required Equitable to promise good-faith negotiations for a new agreement in the notice. R. 27 at 9-10. After a period of procedural wrangling detailed in this Court's prior decision, the Union filed suit to compel arbitration of Grievance 08-28 under § 301 of the NLRA. *See United Steel v. Kentucky West Virginia Gas Co., LLC*, No. 10-11, 2011 WL 1466397, at *1-3 (E.D. Ky. April 18, 2011).

Equitable objected, arguing that Grievance 08-28 requires a decision about whether the Union still represents an appropriate bargaining unit of employees post-reorganization. And so, the argument went, Grievance 08-28 is "primarily representational" and thus within the NLRB's exclusive jurisdiction. This Court rejected Equitable's argument and ordered the matter to arbitration. Equitable has since filed a motion to alter that judgment under Federal Rule of Civil Procedure 59(e), again arguing that Grievance 08-28 is "primarily representational."

## DISCUSSION

What does it mean for a dispute over a collective bargaining agreement to be "primarily representational"? A dispute is run-of-the-mill "representational" if it somehow implicates an employer's statutory duty under 29 U.S.C. § 158(a)(5) to bargain collectively with a union chosen under 29 U.S.C. § 159(a) to represent all of the employees in an "appropriate" bargaining unit by a majority of those employees. *Carey v. Westinghouse*

3

*Elec. Corp.*, 375 U.S. 261, 266 (1964). It is "primarily" so—and thus within the "exclusive" jurisdiction of the NLRB—in at least two circumstances. *Int'l Bhd. of Elec. Workers, Local 71 v. Trafftech, Inc.*, 461 F.3d 690, 693, 695 (6th Cir. 2006) (citations omitted). A dispute is primarily representational either (1) where the NLRB "has already exercised jurisdiction over" it, *id.*, or (2) where the dispute requires an "initial decision in the representation area." *Id.* (quoting *J.P. Morgan Hotel*, 996 F.2d at 565).

Contrary to this Court's earlier decision, Grievance 08-28 is primarily representational because it requires "an initial decision in the representation area." That is, an arbitrator "could not possibly determine whether there has been a violation of the collective bargaining agreement without first deciding whether" the Union remained the § 9(a) representative of the former Kentucky-West employees. *Id.* (quoting *Amalgamated Clothing & Textile Workers Union v. Facetglas, Inc.*, 845 F.2d 1250, 1253 (4th Cir. 1988)). Recall that Grievance 08-28 complains that Equitable did not promise to negotiate a new collective bargaining agreement with the Union in its notice of termination. Yet Equitable would only be permitted to negotiate a new agreement if the Union remained a proper § 9(a) bargaining representative on behalf of former Kentucky-West employees. *See NLRB v. Local Union No. 103, Iron Workers*, 434 U.S. 335, 344 (1978); *Nova Plumbing, Inc. v. NLRB*, 330 F.3d 531, 534 (D.C. Cir. 2003); *cf. DiPonio Const. Co., Inc. v. Int'l Union of Bricklayers*, 739 F. Supp. 2d 986, 993 (E.D. Mich. 2010) ("[W]hether [the employer] has an 'obligation to bargain' turns on whether a section 9(a) relationship exists."). And so, to the extent the reorganization of Kentucky-West raised questions about the Union's continued

representational status under § 9(a), those questions must be resolved before Grievance 08-28 can be.

In turn, the reorganization did indeed pose questions about the Union's continued § 9(a) status. *Cf. Martin Marietta Chems.*, 270 N.L.R.B. 821, 822 (1984) (holding that corporate reorganization that affects employee grouping raises "a question concerning representation"). In order to be an exclusive representative for a group of employees, the Union must enjoy majority support from an "appropriate" bargaining unit. 29 U.S.C. § 159(a); *cf. NLRB v. Burns Int'l Sec. Servs., Inc.*, 406 U.S. 272, 280-81 (1972) (holding that if a change in corporate employer meant that employee bargaining unit was "no longer an appropriate one," the employer may not have a duty to bargain with the union as a § 9(a) representative). And—as the Union might not even dispute—splitting Kentucky-West employees among two other companies with their own employees meant that it was at least possible that the former Kentucky-West employees were no longer an "appropriate" bargaining unit under the NLRA. *Cf. NLRB v. Security-Columbian Banknote Co.*, 541 F.2d 135, 139 (3d Cir. 1976) (noting the possibility that a "change in the control of a business enterprise [could] destroy[] a pre-existing bargaining unit"). Perhaps they are no longer geographically close to one another, no longer perform the same kind of work, no longer interact with one another frequently, or no long have common supervision. *See* Robert A Gorman & Matthew W. Finkin, *Basic Text On Labor Law Unionization and Collective Bargaining* 87-88 (2d ed. 2004) (listing criteria for determining an appropriate bargaining unit). Or, maybe some employees who did not originally support union representation now comprise a majority of a subset transferred to one of the two companies. Or, maybe that

subset of employees, when combined with the employees at the new location, would not support the union.[1] *Id.* at 89. Hence, deciding whether Equitable may bargain with the Union as the employees' representative—the essence of Grievance 08-28—necessarily requires a decision on a representational issue. Namely, the decision maker must decide whether the Union continues to represent an "appropriate" bargaining unit. *Cf. S. Prairie Constr. Co. v. Local No. 627, Int'l Union of Operating Engineers*, *AFL-CIO*, 425 U.S. 800, 805 (1976) (holding that it was inappropriate for a court, rather than the NLRB, to make "the initial determination" as to an appropriate bargaining unit); *Amalgamated Clothing*, 845 F.2d at 1253 (holding that issue was primarily representational partly because it required deciding bargaining unit membership); *Laborers' Pension Fund v. Joe Cachey Constr. Co.*, 947 F. Supp. 365, 370 (N.D. Ill. 1996) (citing *Local Union 204 of the Int'l Bhd. of Elec. Workers v. Iowa Elec. Light & Power Co.*, 668 F.2d 413, 419 (8th Cir. 1982)).

In light of a post-judgment stipulation by the Union, this Court's prior holding to the contrary was a clear error of law. *See* Fed. R. Civ. P. 59(e). There, the Court held that an arbitrator would not need to decide whether the Union remained a § 9(a) representative to hold that Equitable had a contractual duty to promise to negotiate a new agreement with the Union. *Kentucky West Virginia Gas*, 2011 WL 1466397 at *5-8. Yes, it explained, the NLRA would generally forbid enforcing a contractual duty to bargain for a new agreement with a union that is not a § 9(a) representative. *Id.* at *6. But there is an exception. Even if a union is not a § 9(a) representative, an employer can still collectively bargain with that

---

[1] Indeed, according to Equitable, the two units in which former Kentucky-West employees find themselves each recently voted against having the Union represent them. *See* R. 37, Attach. 1 at 21-22.

union on a "members-only" basis. *Id.* That is, an employer could still strike an agreement with a union insofar as the union purports to represent only its consenting members in those negotiations. Not only has the Supreme Court held as much, *see Retail Clerks Int'l Ass'n v. Lion Dry Goods, Inc.*, 369 U.S. 17, 29 (1962), but the very NLRB advice memorandum Equitable cites to the contrary says the same. *See* R. 37, Attach. 2 at 12 ("[A]n employer <u>may</u> recognize and bargain with a minority, members-only union, as long as the employer does not extend that union exclusive status."). So, whether or not the Union is still a § 9(a) representative, this Court held that an arbitrator could decide that Equitable had a contractual obligation to at least bargain with the Union on a members-only basis.

All was well and good with this holding until the Union, for reasons of its own, unequivocally repudiated the possibility that it could represent former Kentucky-West employees on a members-only basis. It said as much in both its brief and at oral argument. *See* R. 41 at 12. With this post-judgment stipulation, there is only one way Equitable could have an enforceable contractual obligation to bargain with the Union for a new agreement— § 9(a). And, again, taking that route requires a decision as to whether the Union remains a proper § 9(a) representative. (Equitable could not have prompted this stipulation before the Court's prior decision. The possibility that the Union could negotiate on a members-only basis was one this Court divined on its own.)

Resisting this conclusion, the Union disagrees that the grievance is primarily representational even if it necessarily requires a decision whether the Union remains a § 9(a) representative. Latching on to language used in *Trafftech*, the Union emphasizes that the grievance must require an "*initial* decision in the representation area" to be primarily

7

representational. 461 F.3d at 695 (emphasis added). Here, the Union continues, the "initial decision" was the one made long ago that Kentucky-West employees were an appropriate bargaining unit when Kentucky-West was still a going concern. But this reads far too much into the words "initial decision." First, to illustrate the concept of an "initial decision in the representation area," the *Trafftech* court quoted a Fourth Circuit decision stating simply that a grievance is primarily representational if one could not decide whether there had been a violation of the collective bargaining agreement "without first deciding whether the union was" a proper statutory representative. *Id.* at 695 (quoting *Facetglas*, 845 F.2d at 1253). The *Trafftech* court then ended that paragraph by reiterating the same point. *Id.* From this, the best reading of *Trafftech*'s use of the phrase "initial decision" is that a dispute is primarily representational if the representational issue must be decided as an "initial" matter before the grievance can proceed. (Alternatively, the term "initial decision in the representation area" might simply be a tautology, meaning that a primarily representational dispute is one within the exclusive jurisdiction of the NLRB and thus one that the NLRB must take up as an "initial" matter. *Cf. S. Prairie Constr. Co. v. Local 627, Int'l Union*, 425 U.S 800, 803 (1976) (referring to an issues within the "statutory province of the Board" as one that should go to the Board for "the initial determination").)

Second, the *Trafftech* court also said that another Sixth Circuit decision, *International Brotherhood of Boilermakers v. Olympic Plating Industries, Inc.*, 870 F.2d 1085 (6th Cir. 1989), implicated "both" of the "primarily representational areas," including the "initial decision" area. *Id.* at 696. And, contrary to the Union's understanding, the primarily representational issue there was not simply the first decision about whether a particular union

could represent a particular bargaining unit. Instead, it was about whether employees who used to be represented by one union could select a new one. *See Olympic Plating*, 870 F.2d at 1086-87, 1089. Accordingly, the Union's narrow construction of "primarily representational" issues is misguided.

The Union further insists that even if Grievance 08-28 does implicate a representational question, separate contractual issues remain that an arbitrator could decide. *See Trafftech*, 461 F.3d at 693 ("When reviewing a claim for arbitration, a court's role is limited to deciding if the party seeking arbitration is making a claim which on its face is governed by the contract.") (internal quotation marks and citations omitted). First, the Union says that there are potentially two different duties to negotiate a new agreement, one statutory and one contractual. Whether or not the NLRA's § 8(a) and § 9(a) impose a statutory duty on Equitable to negotiate with the Union, the theory goes, the contract could impose its own duty to negotiate. For support, the Union relies on opinions cited in this Court's prior decision which indeed held that employers can have a contractual duty to negotiate a new agreement even where the NLRA does not impose one. *See Kentucky West Virginia Gas*, 2011 WL 1466397, at *6. The problem with this argument is that the NLRA, with two exceptions, forbids collective bargaining with a union that does not have § 9(a) status, *see Nova Plumbing*, 330 F.3d at 533-34 (holding that an employer that signs a collective bargaining agreement with a minority union commits an unfair labor practice), and so an employer cannot have an enforceable contractual duty to bargain with a union without § 9(a) status. Neither exception applies here.

The first exception, as explained above, is for unions which do not have § 9(a) majority status but only purport to collectively bargain on a "members-only" basis. Because such a union is only bargaining on behalf of its own consenting members, and not as the unelected representative of an entire bargaining unit, employers do not violate the NLRA by collectively bargaining with them. *See, e.g.*, *Local 377 RWDSU, UFCW v. 1864 Tenants Ass'n*, No. 06-1190, 2007 WL 634751, at *4 (S.D.N.Y. Mar. 1, 2007). And so, this Court previously concluded, an employer could have an enforceable contractual obligation to bargain with a non-§ 9(a), members-only union even if the NLRA does not impose its own obligation. For support, this Court relied on cases from another context in which employers are allowed to negotiate with non-§ 9(a) unions which held that an employer could have a stand-alone contractual duty to bargain for a new agreement. *See Kentucky West Virginia Gas*, 2011 WL 1466397, at *6. But, again, the Union now rejects the possibility that it could bargain on a members-only basis.

The second exception, as alluded to above, is that employers in the construction industry are permitted to collectively bargain with non-§ 9(a) unions (members-only or not) under § 8(f) of the NLRA. And so many courts have held that construction-industry employers can have an enforceable contractual duty to bargain with unions even if those unions do not have § 9(a) status or have lost § 9(a) status. *See, e.g.*, *Local Union No. 666, Int'l Bhd. of Elec. Workers, AFL-CIO v. Stokes Elec. Serv., Inc.*, 225 F.3d 415, 418-419 (4th Cir. 2000). But this is not a construction-industry case.

Yet the Union insists that those construction-industry cases finding a contractual duty to bargain are not limited to the construction industry (where, again, employers are

specifically permitted to bargain with non-§ 9(a) unions). By the Union's lights, employers can *always* create an enforceable contractual duty to bargain for a new agreement—even, apparently, if the NLRA would forbid it. It is true that these construction-industry cases were less than clear about whether they would find a contractual duty to bargain even in cases where the NLRA did not offer a specific allowance for bargaining with a non-§ 9(a) union. But at least the Sixth Circuit seemed to hint that the notion of a stand-alone contractual duty to bargain may pose problems elsewhere: In *Sheet Metal Workers International Association Local 110 Pension Trust Fund v. Dane Sheet Metal, Inc.*, 932 F.2d 578 (6th Cir. 1991), the Court was careful to note the lack of any argument "that it is inconsistent with the federal labor laws for construction industry employers to be allowed to commit themselves to letting an arbitrator extend and modify contracts with labor organizations that may lack majority employee support." *Id.* at 582. What's more, it surely is no accident that all of these cases arose in the construction industry, where bargaining with non-§ 9(a) unions is uniquely allowed. (Contrary to the Union's contention, *American Metal Products, Inc. v. Sheet Metal Workers International Association, Local Union No. 104*, also seems to have arisen in the construction industry because the court's only reason for rejecting the claim that the agreement was a § 8(f) agreement was that the union had proven itself a § 9(a) majority representative. 794 F.2d 1452, 1456 (9th Cir. 1986).) And, ultimately, this Court knows of no way to reconcile the NLRA's general prohibition on collective bargaining with non-§ 9(a) unions with the Union's theory that employers can *always* bind themselves to negotiate a new collective bargaining agreement. Nor has the Union offered any clues.

The Union also seems to maintain that there is an issue of pure contract interpretation that can be separated from the issue whether Equitable has an enforceable duty to bargain for a new agreement. It has repeatedly insisted that the contractual issue here is simply the adequacy of Equitable's notice of termination. Presumably, the argument is that an arbitrator could decide whether the notice of termination needed to include the words "Equitable will bargain with the Union for a new agreement" in the text of the notice without deciding whether Equitable actually has an enforceable duty to bargain for a new agreement. But this argument has several problems. First, it makes little sense to draw a distinction between (1) whether Equitable had an enforceable contractual obligation to include these words of promise in its notice of termination and (2) whether Equitable had an enforceable contractual obligation to promise to negotiate a new agreement in the notice of termination. This would be like drawing a distinction between (1) whether a homebuyer must write "$100,000" in his check to the seller and (2) whether a homebuyer must pay $100,000 to the seller by check. There is no meaningful difference: If there is no enforceable contractual obligation to bargain for a new agreement, there is no enforceable contractual obligation to make such a promise in writing in the notice of termination. Because these two issues overlap so closely, the Union's argument does nothing more than dress up a primarily representational issue as a contractual issue, which it cannot do. *Pace v. Honolulu Disposal Serv., Inc.*, 227 F.3d 1150, 1157 (9th Cir. 2000) ("Indeed, we have warned that end runs around Section 9 of the National Labor Relations Act under the guise of contract interpretation cannot be countenanced.") (internal quotation marks, alterations, and citation omitted). And even if there is a slight distinction between (1) the very narrow issue whether Equitable must write

the words "Equitable will bargain with the Union for a new agreement" in the notice of termination and (2) the representational issue whether it has an enforceable obligation to promise to negotiate a new agreement, the representational issue is still the "primary" one.

Finally, the Union posed one more objection to denying its request for arbitration—for the first time—at oral argument. It contended that if the Court decides that Grievance 08-28 is primarily representational and must be decided by the NLRB in the first instance, the NLRB will nonetheless refuse to decide the issue. It offered little elaboration, though the point seems to be that the time has passed for seeking input from the NLRB in light of recent union elections at the subsidiaries employing former Kentucky-West employees. To begin, this Court will not deny Equitable's Rule 59(e) motion on such an undeveloped argument. *See United States v. Zannino*, 895 F.2d 1, 7 (1st Cir. 1990) ("It is not enough to merely mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones."). And even if it is true that there is some procedural bar to the NLRB's considering the representational issue in this case, the Union would still be out of luck. As best this Court can tell, deciding that a dispute is primarily representational deprives federal courts of jurisdiction over it. The Sixth Circuit has painted the primarily representational test in jurisdictional terms—describing primarily representational matters as within the "exclusive jurisdiction" of the NLRB. *See, e.g.*, *Trafftech*, 461 F.3d at 694; *Olympic Plating*, 870 F.2d 1085, 1089-90.

It is true that another circuit's decision might be read as holding that the rule against exercising jurisdiction over primarily representational issues is a prudential one. *J.P. Morgan Hotel*, 996 F.2d at 565. But even still, the Union has made no argument that this

13

Court can overlook this possibly prudential rule in this case (or even that the rule is prudential). Again, the Court will not put arguments in the Union's mouth. *Zannino*, 895 F.2d at 7. And, regardless, the Union's failure to timely seek the input of the NLRB on the representational issue in this case would not be a basis for casting aside this prudential bar. Insofar as it is prudential, the purpose of the "primarily representational" rule is to promote the "orderly function of the process of judicial review." *S. Prairie*, 425 U.S. at 805 (holding that a court's making an "initial determination" of representational issue is "incompatible with the orderly function of the process of judicial review."); *see J.P. Morgan*, 996 F.2d at 565 (citing *S. Prairie*, 425 U.S. at 803-05, in support of the rule that courts should refrain from making initial decisions in the representation area). And allowing parties to bypass the NLRB's review of representational issues through delay is just as incompatible with that orderly function as courts' preempting the NLRB's authority to make representational decisions.

## CONCLUSION

Accordingly, it is **ORDERED** that the motion to alter or amend the judgment, R. 37, is **GRANTED**. This Court's prior opinion and judgment, R. 35 and R. 36, are **VACATED**. The Court will enter a separate amended judgment.

This the 13th day of June, 2011.



Signed By:
*Amul R. Thapar*  AT
United States District Judge